## Biddle et al. v. Hall, Appellant.

Argued November 13, 1928. Before HENDER-SON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

378

W. *Logan MacCoy*, and with him *Robert J. Sterrett*, for appellant.—Plaintiff did not procure the purchaser: Bennett v. Crew Levick Co., 288 Pa. 180; Speer v. Benedum-Trees Oil Co., 239 Pa. 180.

*Charles G. Gartling*, for appellees.—Plaintiffs were the moving and effective cause of the sale: Cain v. Werner, 67 Pa. Superior Ct. 438; Warne v. Johnston, 48 Pa. Superior Ct. 98; Carr et al. v. Jakoby, 89 Pa. Superior Ct. 299; Lamb v. Kates, 85 Pa. Superior Ct. 438.

OPINION BY KELLER, J., March 1, 1929:

This is an action by one real estate broker against another for a share of the commissions received by the latter in connection with the sale of some real estate.

The contract declared upon by the plaintiffs and proved by the testimony of one of the firm was that defendant was to pay them half the commission collected by him in case the Merrick property was sold by defendant to a purchaser produced by the plaintiffs at a price satisfactory to the defendant's client.

The property was sold by defendant to the Northern Home for Friendless Children for $100,000 and a commission of $3,000 was paid him. The point involved is whether the purchaser was "produced" by plain-

tiffs, or by another broker (Sterrett) with whom defendant divided the commissions.

Plaintiffs' connection with the matter began on April 8, 1927, when Mr. Biddle called the defendant by telephone and asked him if he would agree to pay his firm half the commission if they produced a buyer for the property. Defendant said he would, and confirmed it by a letter in which he agreed to pay them half the commissions in case of a sale to a purchaser produced by them, provided the people they represented had not been dealing with him direct or through other brokers. The name of the purchaser plaintiffs had in mind was not then disclosed.

It appears that the defendant himself had on October 24, 1926, answered an advertisement of the Northern Home for Friendless Children inserted in a newspaper on October 23, 1926, and called their attention to the Merrick property as suitable for their purposes, and that the Trustees of the Home, through the instrumentality of Sterrett, were considering the purchase of that property; that a committee of five trustees, Messrs. Nicholson, Hexamer, Edmonds, Roberts and Van Roden had examined the Merrick property prior to the plaintiffs' conversation with defendant or any agreement as to dividing commissions with them; and that on April 20, 1927, without any communication with plaintiffs, the trustees adopted a resolution to buy the Merrick property within a limit of $100,000 and appointed the president of the corporation, Mr. Nicholson, a committee of one to make whatever offers were necessary to consummate the deal; and that eventually, in June, 1927, with the assistance of Mr. Sterrett, Nicholson bought the property for the Home for $100,000, after making prior unaccepted offers of $60,000 and $80,000, respectively.

It is undisputed that the plaintiffs never knew or consulted with Mr. Nicholson or any of the officers or board of trustees of the corporation, Northern Home

for Friendless Children, in connection with the sale of the Merrick property.

They base their claim to a share of the commission on the fact that they got into communication with and helped to interest in the purchase a Mrs. Murray and a Mrs. Storey, one of whom, they understood, was president of the corporation, but who was in fact president of the board of lady managers of the Home, a wholly different position. It appears that this Home like many similar homes for friendless children chartered at or about the same time (1854), had a dual management or control; a board of trustees, who were men, from whom we're selected the officers of the corporation, who were its responsible agents, in charge of its finances and the purchase and sale of its real estate; and a board of lady managers whose duties were the care and management of the children and the domestic household which their custody entailed. The lady managers were not the officers of the corporation and had no authority to buy or sell real estate for it or bind the corporation in any such transaction. They were naturally consulted by the officers and trustees, as the household management of the home selected would be in their hands, but this was done out of courtesy and not from any corporate obligation.

We need not decide definitely just what was intended by the use of the word ''produced'' in the contract providing for a division of the commission in case the property was sold by defendant ''to a purchaser produced by plaintiffs;''—whether it means, as contended by defendant, that plaintiffs did not produce a buyer within the meaning of the contract, unless they were authorized to represent that buyer; or, as urged by plaintiffs, that they had produced a purchaser if they were the efficient moving cause in bringing the buyer in contact with the seller. It may be said that the testimony of the plaintiff, Biddle, him-

self is rather in keeping with the former position, since he thought he was acting for the president of the Home and authorized to represent it. But whichever view may be the correct one we are of opinion that the verdict and judgment in plaintiffs' favor cannot be sustained. If the defendant's contention is correct it is certain that plaintiffs did not represent the corporation which bought the property; that they never even met or came into contact with the responsible officers and agents of the corporation prior to the purchase. If plaintiffs' view is adopted, the evidence is likewise too overwhelming to admit of dispute that the corporation was in contact with the defendant, and its officers were considering the purchase of the property before the plaintiffs came into the picture, and that the trustees had authorized the president to purchase it at the maximum price, afterwards paid, before plaintiffs made any offer on behalf of the lady managers whom they consulted, and for whom they considered themselves to be acting. That they misunderstood the situation and honestly thought the parties to whose attention they brought the property were the responsible officers of the corporation and that, in consequence, they were the means of first bringing buyer and seller together, cannot be allowed to prejudice the defendant who was not responsible for the plaintiffs' misconception and who had been in touch with the purchaser, through another broker, for some time before he was approached by them.

We are satisfied that the documentary evidence as to the officers of the Home and the authorization to them to purchase the Merrick property before plaintiffs submitted the offer suggested by the lady managers, is so overwhelming and free from question that a verdict of the jury based on plaintiffs' mistaken impression of the situation, due to their lack of knowledge of the real facts, can not be allowed to stand: Macneir v. Wallace, 252 Pa. 323; Raby v. Cell, 85

Pa. 80; Harris v. Blitzstein, 84 Pa. Superior Ct. 498, 501.

The sixth, eleventh and twelfth assignments of error are sustained. The judgment is reversed and is now entered for the defendant.